## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TANYA E. KREBS-COVELLO, | CASE NO. 1:13-cv-02197-GBC |
| Plaintiff, | |
| | (MAGISTRATE JUDGE COHN) |
| v. | |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, | MEMORANDUM |
| Defendant. | Docs. 1, 9, 10, 11, 17, 18, 19 |

### I.      Introduction

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying the application of Plaintiff Tanya E. Krebs-Covello for disability insurance benefits ("DIB") under the Social Security Act, 42 U.S.C. §§401-433, 1382-1383 (the "Act"). Plaintiff was diagnosed with cancer of her anal canal in 2005 and was treated with chemotherapy, radiation, and surgery. As a result, she had a colostomy in 2005, which creates an artificial mechanism for the body to dispose of bodily waste, and continued to use a colostomy bag through the date of the administrative law judge ("ALJ") decision. There had been no evidence of a recurrence of her cancer since she finished treatment in 2007, so her primary claim was that maintaining, changing, and emptying her colostomy bag required additional breaks during the work day. This required the ALJ to evaluate the credibility of her testimony. Under the Act and underlying regulations, an ALJ must evaluate credibility by first determining whether the claimant's medically determinable impairments could  reasonably be expected to cause the alleged symptoms, and then determine whether the claimant's testimony regarding the intensity, persistence, and limiting effects of those symptoms is credible. Once an

ALJ determines that the medically determinable impairments could reasonably be expected to cause the alleged symptoms, the regulations specifically prohibit the ALJ from rejecting a claimant's testimony about their intensity, persistence, and limiting effects solely because objective medical evidence fails to corroborate this testimony. Moreover, although an ALJ should evaluate a claimant's activities of daily living, Third Circuit precedent prohibits an ALJ from relying on sporadic or transitory activities to determine that the claimant is not disabled.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's alleged symptoms, namely, her need for additional breaks during the day. However, the ALJ entirely rejected these claims, and found that Plaintiff needed no additional breaks during the day, because objective medical evidence did not corroborate her claims. The ALJ also rejected her claims because she was able to occasionally care for her granddaughter, engage in household chores, shop, socialize, and perform other activities of daily living. The Court finds that the ALJ improperly violated the regulations prohibition on relying on a lack of objective medical evidence and the Third Circuit's prohibition on relying on sporadic and transitory activities to discount credibility. Consequently, the ALJ's decision that Plaintiff could engage in work in the national economy lacks substantial evidence.

## II.    Procedural Background

On August 2, 2010, Plaintiff filed an application for DIB under Title II of the Act. (Tr. 131-36). On November 9, 2010, the Bureau of Disability Determination denied this application (Tr. 58-64), and Plaintiff filed a request for a hearing on December 22, 2010.  (Tr. 82-98). On November 30, 2011 an ALJ held a hearing at which Plaintiff—what who was represented by an attorney—and a vocational expert ("VE") appeared and testified. (Tr. 25-57).  On December 19, 2011, the ALJ found that Plaintiff was not disabled and not entitled to benefits. (Tr. 7-22). On

February 9,  2012, Plaintiff filed a request for review with the Appeals Council (Tr. 5-6), which the Appeals Council denied on June 25, 2013, thereby affirming the decision of the ALJ as the "final decision" of the Commissioner. (Tr. 1-4).

On August 20, 2013, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 405(g) to appeal the decision of the Commissioner. (Doc. 1). On November 25, 2013, the Commissioner filed an answer and administrative transcript of proceedings. (Docs. 9, 10). On January 9, 2014, Plaintiff filed a brief in support of her appeal ("Pl. Brief"). (Doc. 17). On February 14, 2014, Defendant filed a brief in response ("Def. Brief"). (Doc. 18). On February 28, 2014, Plaintiff filed a brief in reply ("Pl. Reply"). (Doc. 19). On May 1, 2014, the Court referred this case to the undersigned Magistrate Judge. Both parties consented to the referral of this case for adjudication to the undersigned on June 20, 2014, and an order referring the case to the undersigned for adjudication was entered on June 24, 2014. (Doc. 21, 22).

## III.    Standard of Review

When reviewing the denial of disability benefits, the Court must determine whether substantial evidence supports the denial. Johnson v. Commissioner of Social Sec., 529 F.3d 198, 200 (3d Cir. 2008); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988). Substantial evidence is a deferential standard of review. See Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence "does not mean a large or considerable amount of evidence." Pierce v. Underwood, 487 U.S. 552, 564 (1988). Substantial evidence requires only "more than a mere scintilla" of evidence, Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999), and may be less than a preponderance. Jones, 364 F.3d at 503. If a "reasonable mind might accept the relevant evidence as adequate" to support a conclusion reached by the Commissioner, then the Commissioner's determination is supported by substantial evidence. Monsour Med. Ctr. v.

Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir.

1999); Johnson, 529 F.3d at 200.

### IV.     Sequential Evaluation Process

To receive disability or supplemental security benefits, a claimant must demonstrate an

"inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §

423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). The Act requires that a claimant for disability benefits

show that he has a physical or mental impairment of such a severity that:

> He is not only unable to do his previous work but cannot, considering his age, education,
> and work experience, engage in any other kind of substantial gainful work which exists in
> the national economy, regardless of whether such work exists in the immediate area in
> which he lives, or whether a specific job vacancy exists for him, or whether he would be
> hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step evaluation process to determine if a person is eligible

for disability benefits. See 20 C.F.R. § 404.1520; see also Plummer, 186 F.3d at 428. If the

Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence,

review does not proceed. See 20 C.F.R. § 404.1520.  The Commissioner must sequentially

determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the

claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed

impairment from 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the claimant's

impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's

impairment prevents the claimant from doing any other work. See 20 C.F.R. §§ 404.1520,

416.920. Before moving on to step four in this process, the ALJ must also determine Plaintiff's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).

The disability determination involves shifting burdens of proof. The claimant bears the burden of proof at steps one through four.   If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). The ultimate burden of proving disability within the meaning of the Act lies with the claimant. See 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a).

### V. Relevant Facts in the Record

Plaintiff was born on July 17, 1967 and was classified by the regulations as a younger individual through the date of the ALJ decision. 20 C.F.R. § 404.1563. (Tr. 132).  She has a limited education and no past relevant work. (Tr. 157).

Plaintiff was diagnosed with invasive adenocarcinoma, which is a "a cancer growing out of gland tissue," 1-A Attorneys' Dictionary of Medicine A-2772, of her anal canal in 2005. (Tr. 224). She was treated with surgery, chemotherapy, and radiation.  (Tr. 225). First, she underwent a six-week course of radiation and continuous chemotherapy. (Tr. 223). Then, Plaintiff began a second round of chemotherapy, this time receiving twelve discrete treatments. (Tr. 219). She started this round receiving a treatment once every other week, but then had to drop back to once every three weeks when she had difficulties with her blood counts.  (Tr. 216, 219). She completed treatment in 2006, and did well thereafter. (Tr. 213-14). On June 7, 2007, CT scans indicated that there was no definite evidence of a recurrence. (Tr. 231). She continued to complain of fatigue, but her oncologist, Dr. Vohra, attributed her fatigue to weight gain. (Tr. 209).

On February 6, 2008, Plaintiff followed-up with Dr. Vohra. (Tr. 208). She had resumed working. (Tr. 208). He noted that "Tanya is doing well. It is almost two years since she completed chemotherapy." (Tr. 208). On October 15, 2008, Plaintiff followed-up with Dr. Vohra. (Tr. 207). She was "working full time and feels well." (Tr. 207). Dr. Vohra indicated that "[h]er colostomy is functioning well." (Tr. 207). On December 9, 2009, Plaintiff followed up with Dr. Vohra. (Tr. 204, 258). She was "feeling well and [was] working full time without difficulty." (Tr. 204). On June 23, 2010, Plaintiff followed up with Dr. Vohra. (Tr. 203, 257). She was "feeling well" with no neuropathy and was "working full time." (Tr. 203).

As a result of her cancer, Plaintiff underwent a colostomy in 2005. (Tr. 223). On June 6, 2006, she was "given a note regarding her mediport and all her colostomy supplies to take with her for her flight to Italy in August." (Tr. 215). On June 26, 2006, a CT scan indicated that the ostomy appeared to be satisfactory and unchanged. (Tr. 234). CT scans on November 15, 2008 indicated that Plaintiff was "status post a partial colectomy. There is an ostomy in the left lower quadrant. The rectal pouch appears normal." (Tr. 226).

On  September 20, 2010, Plaintiff submitted a Function Report. (Tr. 180). She indicated that she had no problems with her personal care, but that her impairments affected her sleep because she cannot lie down correctly. (Tr. 181). She reported that she prepares meals daily and that there had been no change in her cooking habits since her impairments began. (Tr. 182). She reported that she spends three hours every other day doing laundry and cleaning. (Tr. 182). She reported that she goes outside every day, but does not drive. (Tr. 183). She reported that she shops once a week for up to two hours for food and clothes. (Tr. 183). She reported that she does not have any hobbies or interests and only spends time with her dogs. (Tr. 184). She reported that her impairments affect her ability to lift, bend, stand, and walk. (Tr. 185). In Plaintiff's appeals

report, she indicated that her impairments affected her ability to care for her personal needs because she was always tired and taking a bath was always a challenge. (Tr. 192).

On October 19, 2010, Dr. Carla Huitt, M.D. completed a physical RFC assessment. (Tr. 63). She indicated that there was no evidence of recurrence, so Plaintiff's exertions were limited to those caused by the colostomy. (Tr. 62). She opined that Plaintiff could lift twenty-five pounds frequently and fifty pounds occasionally. (Tr. 62). She opined that Plaintiff could stand, walk, or sit for more than six hours on a sustained basis in an eight-hour workday. (Tr. 62). She did not indicate a need for any additional  breaks during the workday. (Tr. 62).

On January 21, 2011, Plaintiff followed-up with Dr. Vohra. (Tr. 265). She indicated that when she sweats a lot, the skin underneath her ostomy bag becomes irritated. (Tr. 265). He recommended that she see Dr. Nicholson for the "skin problem from the ostomy bag." (Tr. 265). However, any follow-up with Dr. Nicholson was not before the ALJ because the state agency requested records from Dr. Nicholson on October 14, 2010, and never sent any subsequent requests for records from him. (Tr. 259).

On November 30, 2011, Plaintiff appeared and testified at the ALJ hearing. (Tr. 27). At the hearing, Plaintiff's counsel explained that, unlike typical claims, Plaintiff's impairments stemmed from a requirement to take additional breaks during the workday to change her colostomy bag. (Tr. 29). Plaintiff testified that in the summer, the entire bag will come off when she sweats, and she has to go all the way home to put on a new one. (Tr. 35). She explained that she cannot change the bag at work "because of germs." (Tr. 38).  She explained that, when it falls off, she has to change clothes. (Tr. 44). She indicated that, when it gets clogged, she has to go to the bathroom to take care of it. (Tr. 35). She testified that she has to change it seven to eight times per day. (Tr. 40).  She stated that it takes fifteen to twenty minutes to change on a

good day and twenty-five to thirty minutes to change on a bad day. (Tr. 45). She explained that when she changes it, she has to take it off entirely, place it in the bathtub, and clean it with peroxide wipes. (Tr. 47). She testified that the longest she had been out without changing her bag was five to six hours for her daughter's wedding, but that they had to leave when it came off. (Tr. 49). She explained that she had to go outside seven or eight times to release gas that had built up in the bag. (Tr. 49).

She testified that she occasionally watched her seven-month old granddaughter, and that she had most recently done so four days before the hearing. (Tr. 34). She explained that she brings her granddaughter into the bathroom with her when she changes her colostomy bag and places her in a playpen. (Tr. 43).  Plaintiff testified that she had never worked for anyone but family members, like her husband. (Tr. 31). She testified that, when she was working for family members, they would allow her to take as many breaks as she needed to for changing her colostomy bag. (Tr. 42).

A vocational expert also appeared and testified. (Tr. 51). He testified that, if Plaintiff needed a ten-minute opportunity every hour to attend to a colostomy bag, "there might be a selective few employers that could tolerate that, but I think they would be few in number, and across the board, not in any one specific, light, unskilled occupation." (Tr. 54). He indicated the result would be the same if she needed an additional two breaks in the morning and two breaks in the afternoon. (Tr. 54). The vocational expert said that he could not recall placing a person with a colostomy bag in any employment in his fifty year history. (Tr. 55).

The ALJ issued a decision on December 19, 2011. (Tr. 10). At step one, the ALJ found that Plaintiff was insured through December 31, 2014 and had not engaged in substantial gainful activity since July 31, 2010, the alleged onset date. (Tr. 12). At step two, the ALJ found that

Plaintiff's status-post adenocarcinoma of the anal canal and status-post colostomy to be medically determinable and severe. (Tr. 12). The ALJ found that Plaintiff's osteopenia and obesity were not severe. (Tr. 12). At step three, the ALJ found that Plaintiff did not meet or equal a listing. (Tr.13). The ALJ found that Plaintiff had the RFC to engage in the full range of light work, and would not need additional breaks. (Tr. 13). The ALJ found that Plaintiff could perform past relevant work and could also perform other work in the national economy. (Tr. 14).

### VI.    Plaintiff Allegations of Error

### A.    Past relevant work

Plaintiff asserts that the ALJ committed an error in calculating her earnings from prior work and improperly characterized it as past relevant work. (Pl. Brief at 12). Defendant concedes that the ALJ miscalculated Plaintiff's earnings, and that she has no past relevant work. (Def. Brief at 9) Consequently, the ALJ's step four determination lacks substantial evidence, and Plaintiff has no past relevant work.

### B.    The ALJ's credibility assessment

Plaintiff contends that the ALJ's determination that she could engage in other work in the national economy lacks substantial evidence because it did not account for her claims that she needed additional breaks to care for her colostomy bag. She asserts that the ALJ improperly relied on a lack of objective evidence and activities of daily living to find that her statements were not credible. Defendant argues that the ALJ's credibility assessment was correct because "the medical evidence of record does not support Plaintiff's testimony that she needs frequent breaks during the day to attend to her colostomy bag." (Def. Brief at 10). Defendant had earlier explained, "considering this lack of evidence regarding Plaintiff's need to attend to her colostomy bag, the ALJ reasonably found Plaintiff's testimony 'unbelievable'" and that if

"Plaintiff truly required seven or eight breaks a day lasting 15 to 30 minutes to attend to her colostomy bag, it is likely that she would have reported this to her physicians at some point during the five-year time period prior to her date of onset." (Def. Brief at 8).

When making a credibility finding, "the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)…that could reasonably be expected to produce the individual's pain or other symptoms." SSR 96-7P. Then:

> [T]he adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7P. The Third Circuit has explained:

> An ALJ must give serious consideration to a claimant's subjective complaints of pain, even where those complaints are not supported by objective evidence. *Ferguson v. Schweiker,* 765 F.2d 31, 37 (3d Cir.1985). "While there must be objective evidence of some condition that could reasonably produce pain, there need not be objective evidence of the pain itself." *Green,* 749 F.2d at 1071. Where medical evidence does support a claimant's complaints of pain, the complaints should then be given "great weight" and may not be disregarded unless there exists contrary medical evidence. *Carter,* 834 F.2d at 65; *Ferguson,* 765 F.2d at 37.

Mason v. Shalala, 994 F.2d 1058, 1067-68 (3d Cir. 1993).  Two factors an ALJ may consider are the objective medical evidence and activities of daily living. SSR 96-7p. However, "[i]t is well established that sporadic or transitory activity does not disprove disability." Smith v. Califano, 637 F.2d 968, 971-72 (3d Cir. 1981) ("The ALJ's error in drawing an inference from sporadic activities to a lack of disabling pain is compounded by the absence of corroborating medical testimony. Such evidence is essential to a finding of non-disability."). With regard to objective medical evidence, the regulations state:

> However, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work (or if you are a child, to function independently, appropriately, and effectively in an age-appropriate manner) solely because the available objective medical evidence does not substantiate your statements.

20 C.F.R. § 416.929(c)(2). Thus, lack of objective evidence of symptoms, alone, is insufficient to

reject a claimant's credibility. <u>Mason v. Shalala</u>, 994 F.2d 1058, 1067-68 (3d Cir. 1993); <u>Green</u>

<u>v. Schweiker</u>, 749 F.2d 1066, 1071 (3d Cir. 1984); <u>Ferguson v. Schweiker</u>, 765 F.2d 31, 37 (3d

Cir. 1985).

Applying these regulations, another District Court rejected an  ALJ's credibility

assessment under similar circumstances:

> The ALJ's conclusion that the medical evidence does not support the degree of pain alleged is an improper basis for a judgement on credibility. The Social Security Regulations states that:
>> we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements.
>
> 20 C.F.R. § 404.1529(C)(2). It is true that lack of medical evidence is not the only factor considered by the ALJ in his determination. However, because the alternate justification is not supported by substantial evidence either, we find the ALJ cannot use a perceived lack of medical evidence as a basis for devaluation of plaintiff's testimony.
>
> The additional reason given by the ALJ for the devaluation of plaintiff's testimony was the evidence of her daily activities. The ALJ may consider the extent of daily activities in determining the credibility of a claimant's testimony. *Turby v. Barnhart,* 54 Fed .Appx. 118, (3rd Cir.2002). However, "disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity." *Smith v. Califano,* 637 F.2d 968, 971 (3rd Cir.1981). Rather, we conclude, there must be substantial evidence that the daily activities exceed the claimant's medical limitations in order for the ALJ to draw a negative conclusion from the claimant's daily activities. In this instance, the plaintiff testified to a range of abridged daily activities: shopping with the help of her children, laundry with the help of her son, limited driving and walking, and occasionally dusting. (Tr. 41–42, 60). None of these activities contradict the limitations placed upon the claimant by her treating physicians. Therefore, the ALJ was not supported in his finding that the claimant's activities were grounds to discount the claimant's testimony.

<u>Hughes-Rehrit v. Barnhart</u>, C.A. 02-1516, 2003 WL 22005027  at *6 (E.D. Pa. Mar. 26, 2003)

Here, the ALJ rejected Plaintiff's credibility because objective evidence failed to corroborate her symptoms and because she was able to engage in activities of daily living. However, the ALJ first determined that Plaintiff's impairments could reasonably be expected to produce her symptoms. (Tr. 14). A lack of objective evidence can be used to find that Plaintiff's impairments could not reasonably be expected to produce her symptoms, but is insufficient, alone, to reject her statements regarding the intensity, persistence, and limiting effects of those conditions Once the ALJ determined that Plaintiff's impairments could reasonably be expected to produce her symptoms, she was not entitled to rely on a lack of corroborating medical evidence to discount her credibility.

The ALJ did not identify any medical evidence that contradicted Plaintiff's claims. If colostomy bags would normally require multiple changes throughout the day, there is no reason Plaintiff would have complained to her physicians regarding the colostomy bag. Plaintiff had reported that she was able to work "full-time" to her doctors, but she explained that she was working for her husband and he allowed her to take breaks as needed.  (Tr. 41-42). The Court notes that, although Plaintiff was initially scheduled for a consultative exam, that exam was cancelled. (Tr. 263).   The ALJ did not elicit any medical opinion testimony concerning the typical use of a colostomy bag, and the only medical opinion in the record was rendered before Plaintiff claimed that her limitations from the colostomy bag required additional breaks during the day. Moreover, although Dr. Vohra indicated that Plaintiff would follow-up with Dr. Nicholson for her colostomy bag problems in 2011, the ALJ did not seek medical records from Dr. Nicholson after 2010. (Tr. 254). The Court notes that an ALJ "must secure relevant information regarding a claimant's entitlement to social security benefits," Ventura v. Shalala, 55

F.3d 900, 902 (3d Cir. 1995) and must "develop the arguments both for and against granting benefits." Sims v. Apfel, 530 U.S. 103, 103-04 (2000).

Moreover,  none of the activities cited by the ALJ-caring for her granddaughter, her personal needs, prepare meals, do light household chores, shop, and socialize-contradict Plaintiff's testimony that she would need to change her colostomy bag several times a day. Like the ALJ in Smith v. Califano, the ALJ improperly drew an inference from Plaintiff's transitory activities and this error was compounded by the ALJ's failure to obtain corroborating medical evidence.  Given that an ALJ is required to develop a record in favor of benefits, Sims, 530 U.S. at  103-04 (2000), bears the burden of proof at step five,  Mason, 994 F.2d at 1064 (3d Cir. 1993), and improperly rejected Plaintiff's credibility on the basis of activities of daily living and a lack of objective medical evidence, the Court cannot conclude that substantial evidence supports the ALJ's step five determination.

## VII.    Conclusion

Therefore, the Court finds that the decision of the ALJ lacks substantial evidence. Pursuant to 42 U.S.C. §§ 405(g), the decision of the Commissioner is vacated, and this case is remanded for further proceedings.

An appropriate Order in accordance with this Memorandum will follow.

Dated: September 26, 2014

_____ s/Gerald B. Cohn  _____
GERALD B. COHN
UNITED STATES MAGISTRATE JUDGE